UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CASIMER J. JASZEWSKI,

                          Plaintiff,              05-CV-6310T

                  v.                              **DECISION**
                                                  **and ORDER**
V-GPO, INC., JOHN N. BLAIR,
and BLAIR & ROACH, LLP.,

                          Defendants.
_____

                        INTRODUCTION

     Plaintiff Casimer J. Jaszewski, ("Jaszewski"), brings this
action against defendants V-GPO, Inc., ("V-GPO"), John N. Blair,
Esq., ("Blair") and the law firm of Blair and Roach, LLP., claiming
that the defendants unlawfully converted plaintiff's property, and
that defendant V-GPO breached a contract known as the Common Stock
Escrow Agreement entered into on December 6, 2001.  Jaszewski seeks
damages for the alleged breach of contract and conversion of
property, and recision of a modification made to the Common Stock
Escrow Agreement.

     Defendant V-GPO moves for summary judgment in its favor on
grounds that this court lacks subject matter jurisdiction over the
dispute because the amount in controversy is not in excess of
$75,000.00.  V-GPO further contends that plaintiff's cause of
action for conversion is untimely, and that its breach of contract
claim is defective. V-GPO also contends that there is no basis for
rescinding the modification to the contract.

     Defendants Blair and Blair and Roach move for summary judgment
on grounds that because they did not exercise dominion or control

over any of plaintiff's property, they may not be held liable for conversion.

For the reasons set forth below, I grant defendants' motions for summary judgment.


<u>BACKGROUND</u>

Plaintiff Casimer Jaszewski ("Jaszewski") was the owner of controlling interest in a company known as Epicure Investments ("Epicure"). Epicure was a publicly-traded shell corporation. In 2001, Jaszewski became interested in selling Epicure, and through the assistance of a third company, arranged for the purchase of Epicure by defendant V-GPO (a privately-held company). V-GPO was interested in purchasing a publicly-traded shell corporation for the purpose of transforming V-GPO into a publicly-traded company.

Jaszewski and V-GPO agreed to enter into a "reverse merger" transaction, whereby V-GPO would merge with Epicure, and in doing so, would become a publicly traded company. As part of the merger transaction, Jaszewski transferred 2,010,000 shares of stock to a company known as Belmont Securities, which company was to resell the shares and pay Jaszewski after certain amounts of the shares had been sold.

As an additional condition of the merger, V-GPO required that all outstanding $.001 par value Epicure stock (that was not sold as part of the merger transaction) be escrowed for a period of years following the merger. The parties agree that the remaining number of outstanding shares to be escrowed was 523,394, and that the

holders of these shares were Jaszewski himself and members of his immediate family. To effectuate the escrowing of the remaining 523,394 shares, Epicure entered into an agreement with the holders of the outstanding shares pursuant to which the stock holders agreed to have their shares held in escrow. The escrow agreement, entitled the "Common Stock Escrow Agreement," ("the Escrow Agreement") was entered into by Epicure and the holders of the outstanding shares on December 6, 2001. Pursuant to the terms of the escrow agreement, the escrow period was to last for two years.

Plaintiff delivered the stock as required to defendant law firm Blair and Roach. Thereafter, in June, 2002, the plaintiff entered into another transaction with V-GPO pursuant to which plaintiff sold V-GPO 427,390 shares of stock being held in escrow in return for $25,000 and 450,000 shares of V-GPO stock.[1] This

---

[1] While Plaintiff acknowledges that he agreed to transfer 427,390 of the escrowed shares to V-GPO in exchange for $25,000 and 450,000 shares of V-GPO stock, and that he authorized V-GPO to sell the 427,390 shares for the purpose of raising capital, (actions which appear to indicate a sale of the shares) plaintiff, on several occasions, characterizes the transfer of the 427,390 shares as a "loan." See e.g., Plaintiff's Memorandum of Law in Opposition to Defendant V-GPO's Renewed Motion for Summary Judgment at p. 10-11 (asserting that "pursuant to defendants' request, plaintiff loaned defendants 427,390 of his free trading shares in exchange for $25,000 and 450,000 replacement shares). This inconsistency is repeated by the plaintiff with respect to his claim of what was owed to him by V-GPO upon expiration of the escrow period. On one occasion, plaintiff alleges that upon expiration of the escrow period, he was entitled to his original 427,390 shares and the 450,000 "replacement" shares (See Plaintiff's Memorandum of Law in Opposition to Defendant V-GPO's Renewed Motion for Summary Judgment at p. 5 (stating that "as of January 2, 2004, plaintiff and his family were entitled to receive all of their shares back free of any trading restrictions, including the $450,000 replacement shares.")(emphasis added) On another occasion, however, plaintiff seems to acknowledge that upon the expiration of the escrow period, he would have been entitled to the 450,000 replacement shares and all of his original shares less the 427,390 that were sold in June 2002.) See Plaintiff's Memorandum of Law in Opposition to Defendant V-GPO's Renewed Motion for Summary Judgment at p. 15. See also Declaration of Casimer Jaszewski at ¶ 30 ("As to my shares . . . 427,390 out of my total 444,780 of free-trading Epicure Investments, Inc. shares had been exchanged or replaced for 450,000 V-GPO shares to be held under the same terms of the lock-up agreement.")

transaction was memorialized in a June 6, 2002 letter from V-GPO to Jaszewski indicating that Jaszewski would receive 450,000 shares of V-GPO stock, to be held in escrow pursuant to the December 6, 2001 Escrow Agreement.   Although the parties acknowledge that the transfer of 450,000 V-GPO shares to the plaintiff, and payment of $25,000 to the plaintiff was in return for the transfer of plaintiff's 427,390 shares of stock to V-GPO, the agreement is silent as to plaintiff's obligation to sell 427,390 of his shares, and defendant's obligation to pay Jaszewski $25,000.

Plaintiff contends that in attempting to finalize the sale of his 427,390 shares for $25,000 and 450,000 V-GPO shares, defendant V-GPO demanded that plaintiff amend the Escrow Agreement to provide for a three-year escrow period, as opposed to the two-year period that had already been agreed to.   Plaintiff contends that V-GPO threatened to not complete the transaction unless plaintiff would agree to such an amendment. As a result, plaintiff signed a second Escrow Agreement which provided for a three-year escrow period rather than a two-year period.   The second Escrow Agreement does not state that it is an amendment or a modification of the original agreement, or even acknowledge that a first agreement existed. Indeed, with the exception of the longer escrow period, the second agreement is identical to the first agreement, including the portion that states the agreement was entered into on December 6, 2001.   One other difference is that while the first Escrow Agreement was signed by all holders of outstanding shares, the second agreement was signed only by Jaszewski.

Upon completion of the two-year period contemplated in the original Escrow Agreement, plaintiff demanded the return of his stock from the defendant.   The defendants refused to return plaintiff's stock on grounds that the plaintiff had modified the agreement and agreed to a three-year escrow period.   After the three year period passed, plaintiff contends that the defendants returned only some of the shares, and that the shares that were returned were improperly restricted, thus making them effectively worthless.   Defendants contend that the stock that was returned to him was the remainder of his original stock and the stock that he had agreed to accept in exchange for 427,390 of his original shares.

DISCUSSION

I.   <u>Defendants' Motions for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.   <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could

find in favor of that party, a grant of summary judgment is appropriate.  Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

    II.  Defendant V-GPO

    A.  Recision of the Second Escrow Agreement.

    Plaintiff seeks a declaration that the Second Escrow Agreement is void on grounds that he was forced to sign the Agreement under economic duress.  Under New York law, a contract may be voidable on grounds of economic duress where the plaintiff can demonstrate that he was forced to enter into an agreement by means of a wrongful threat that precluded the exercise of his free will.  First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 629 (2nd Cir. 1972)(applying New York law).

    In the instant case, plaintiff alleges that the defendant threatened to not go forward with the purchase of plaintiff's 427,390 shares of stock unless the plaintiff agreed to extend the escrow period of the original Escrow Agreement, and to sign other agreements modifying his rights contained in other previous agreements between the parties.  He claims that "out of a fear that I would lose everything" he signed documents modifying his previous agreements, including the previous escrow agreement.

    Plaintiff's allegation that the defendant would not agree to purchase his shares absent a modification to the escrow period and other previous agreements does not establish that he was forced to modify those agreements by means of a wrongful threat that precluded the exercise of his free will.  Jaszewski was not forced

to sell 427,390 of his shares to V-GPO, and therefore, if he did not want to modify the previous agreements, including the escrow agreement, he could simply have elected not to sell those shares. The evidence in the record demonstrates that plaintiff would not have been required to modify the previous agreements absent his desire to enter into a post-merger transaction in which he agreed to sell 427,390 of his pre-merger shares. Rather, it is clear from the record that the defendant made modification of the previous agreements a condition of the post-merger stock sale, and that plaintiff agreed to that condition. Accordingly, plaintiff is unable to establish a claim for recision of that contract based on economic duress.

A.   Breach of Contract

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2nd Cir. 2004)(quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996).

Plaintiff alleges that V-GPO breached the Escrow Agreement by failing to deliver the escrowed stock following the expiration of the two-year escrow period as set forth in the original escrow agreement. Plaintiff further contends that once the stock was delivered, he did not receive all of the stock he was due, and the stock he received was improperly restricted.

Initially, I note that V-GPO is not a party to the Escrow Agreement under which plaintiff brings this claim.  Rather, the Escrow Agreement is an agreement between Epicure Investments and Jaszewski, and Jaszewski's wife and son.  Indeed, under both the original Escrow Agreement and the Second Escrow Agreement, the escrow agent is responsible for holding the escrow shares, and returning those shares upon expiration of the escrow period.  While V-GPO was one of two companies that appointed the escrow agent, V-GPO is not the escrow agent itself, nor has the escrow agent been named as a party.

Assuming arguendo that V-GPO may be responsible for the return of plaintiff's escrowed shares, plaintiff has failed to establish a cause of action for breach of contract.  Because plaintiff agreed to a 3-year escrow period, plaintiff was not entitled to receive the remainder of his escrowed shares, and the 450,000 V-GPO shares for which he had negotiated, until January, 2005.  Plaintiff concedes that on January 4, 2005, he received the 450,000 shares, and the evidence in the record demonstrates that plaintiff also received the remainder of his escrowed shares.  Accordingly, because plaintiff received all the shares to which he was entitled upon the expiration of the escrow period, plaintiff has failed to state a cause of action for breach of contract.

B.   Conversion

Plaintiff contends that V-GPO unlawfully converted his property by failing to return his escrowed shares upon the expiration of the two-year escrow period set forth in the original

Escrow Agreement.  Because I find that the plaintiff subsequently agreed to a three-year escrow period, and that he received the stock he was entitled to upon the expiration of the three-year period, I find that plaintiff has failed to state a cause of action for conversion.[2]

III. <u>Defendants Blair and Roach and Blair, LLC</u>.

Plaintiff alleges that Attorney John Blair, and the law firm of Blair and Roach unlawfully converted his property in connection with the reverse merger transaction.  Specifically, Jaszewski claims that pursuant to the December 6, 2001 Common Stock and Escrow Agreement, he delivered 523,394 shares of stock to the Firm of Blair and Roach to be held in escrow for two years.  Plaintiff claims that upon expiration of the two-year period, defendants John Blair and Blair and Roach ("the Blair defendants") refused to return the stock.  The Blair defendants contend that because they did not act as escrow agents with respect to the escrow transaction, but instead merely took delivery of the plaintiff's stock certificates as a matter of convenience to the parties, and on behalf of their client V-GPO, they can not be held liable for conversion of property.

As set forth above, I find that the plaintiff agreed to a three-year escrow period, and therefore, was not entitled to the

---

[2] While the plaintiff agreed to modify the escrow period from two to three years, that modification, pursuant to the terms of both the original and second Escrow Agreements, was not binding on plaintiff's wife or son.  Neither Jaszewski's wife nor son executed the modified Escrow Agreement, and therefore the amended escrow period was not applicable to them.  Neither the estate of Jaszewski's wife, nor Jaszewski's son are parties to this action.

return of his escrowed stock until January, 2005. Because
Jaszewski received the stock to which he was entitled on January 4,
2005, plaintiff has failed to state a claim for conversion.

Moreover, "[t]o establish a claim of conversion under New York
law, a plaintiff must show legal ownership or an immediate superior
right of possession to a specifically identifiable thing and must
show that the defendant exercised unauthorized dominion over the
thing in question to the exclusion of the plaintiff's rights."
Capital Distributions Services, Ltd. v. Ducor Exp. Airlines, Inc.
440 F.Supp.2d 195, 207-208 (E.D.N.Y., 2006)(citing Batsidis v.
Batsidis, 9 A.D.3d 342, 343, 778 N.Y.S.2d 913 (2d Dep't 2004).
"Where possession of the property is initially lawful, conversion
occurs when there is a refusal to return the property after a
demand." Capital Distributions Services, Ltd., 440 F.Supp.2d at
208.

In the instant case, plaintiff has failed to establish that
the Blair defendants exercised unauthorized dominion over the stock
held in escrow. It is undisputed that neither John Blair nor Blair
and Roach acted as escrow agents with respect to the escrow
transaction. The Blair defendants could not dispose of, trade, or
sell the stock, but instead merely accepted delivery of plaintiff's
stock certificates on behalf of their client. Accordingly, the
Blair defendants did not exercise dominion or control over the
stock.

Plaintiff contends, however, that the Blair defendants did
exercise control over the stock because V-GPO directed that

plaintiff deliver the stock to Blair and Roach, who accepted the stock certificates, allegedly held the stock certificates for three years, and refused to return the stock upon plaintiff's demand. Assuming plaintiff's allegations to be true, such claims fail to state a claim for conversion.  While it is true that Blair and Roach accepted delivery of the stock, the mere fact they took physical possession of the stock certificates as a convenience to the parties does not establish that they exercised the reeuired control or dominion over the stock.  Rather, it is clear from the terms of the escrow agreement that the escrow agent, not the Blair defendants, exercised control over the stock during the escrow period.

However, even if the Blair defendants had physical possession of the stock certificates, the refusal of the defendants to return the stock certificates does not constitute conversion absent proof offered by the plaintiff to the defendants that he was legally entitled to the certificates.  "Where a person is rightfully in possession of property, continued custody of the property and refusal to deliver on demand of the owner until the owner proves his right, constitutes no conversion. The owner is wronged by the custodian only where there is 'a defiance of the owner's right, a determination to exercise dominion and control over the property and to exclude the owner from the exercise of his rights.'" Bradley v. Roe, 282 N.Y. 525, 531-32 (1940) (quoting Gillet v. Roberts, 57 N.Y. 28, 33 (1874)).  Here there is no dispute that the Blair defendant's custody of the stock certificates was initially

rightful.  <u>See</u> Plaintiff's Memorandum of Law in Opposition to
Defendant's motion for Summary Judgment at ¶ 3 (conceding that
defendants' possession of stock was "originally rightful in
nature.")  Moreover, there is no evidence that Jaszewski furnished
proof of his right of ownership or entitlement to possession of the
stock to the escrow agent or to the Blair defendants when, after
two years, he demanded return of the escrowed stock certificates.
Indeed, because Jaszewski entered into an agreement pursuant to
which he agreed to a three-year escrow period, Jaszewski was not
entitled to the certificates.  To support his claim of rightful
ownership of the stock at that time, plaintiff would have been
required to prove that the agreement setting forth the three-year
period was invalid.  There is no evidence in the record that
Jaszewski made such a showing.

Finally, plaintiff complains that when he did finally receive
stock certificates following the expiration of the escrow period,
he did not receive the certificates he had bargained for.  Since
the Blair defendants were neither a party to the escrow agreement,
nor escrow agents, they were not responsible for delivering stock
certificates that were acceptable to the plaintiff.  Accordingly,
I find that plaintiff has failed to state a claim for conversion
against the Blair defendants.

CONCLUSION

_____For the reasons set forth above, I grant defendants' motions
for summary judgment, and dismiss plaintiff's complaint with
prejudice.


ALL OF THE ABOVE IS SO ORDERED.


                              s/Michael A. Telesca
                             MICHAEL A. TELESCA
                         United States District Judge

Dated:    Rochester, New York
          October 19, 2007